RUTH CORN, Appellant, *v.* JAMES B. FRENCH, Respondent.

No. 4016

November 17, 1958.                    331 P.2d 850.

*Emilie N. Wanderer,* of Las Vegas, for Appellant.

*Morse, Graves & Compton,* of Las Vegas, for Respondent.

**O P I N I O N**

By the Court, BADT, C. J.:

This is an appeal from a judgment for defendant rendered upon a verdict by a jury in a malpractice action growing out of an alleged unauthorized and unnecessary mastectomy. Appellant lists six assignments of error.

(1) The first assignment of error is the court's denial of the request of the plaintiff's counsel to be granted permission "to have Mr. Miles, a member of the New York bar, to sit at the counsel table with me." The explanation was that counsel had been injured the day before and was not very well. She made no request that Mr. Miles be admitted for the purpose of the trial. Defendant objected "until Mr. Miles is duly admitted to practice before this court." The assignment is without merit.

(2) Error is assigned in permitting two attorneys of the law firm appearing for the defendant to participate jointly in the trial, "which attorneys, with piston-like regularity, alternately rose and fired objections faster than it was humanly possible for any single attorney to efficiently meet and oppose." We are not referred to the record for any objections, motions or orders in the premises. The matter was within the discretion of the court and we find no abuse of such discretion.

(3) It is contended that the court erred in refusing to charge the jury that the evidence introduced by the plaintiff, by way of medical treatises, which had during the trial been read into evidence, could be received and treated by the jury as evidence on behalf of the plaintiff. The treatises had been read in evidence and were before the jury. The regular instructions as to the jury's consideration of all admitted evidence were given. No authorities are cited in support of the assignment and we find no merit in it.

(4) The fourth error assigned is that the court permitted the introduction of personalities by respondent's counsel and that this created bias and prejudice in the jury and was prejudicial. No reference to the record was made. Although respondent's answering brief asserted, "The record is utterly silent with reference to the matter," appellant's reply brief still refrained from pointing

out the place in the 364-page transcript of the trial proceedings at which these matters were recorded. Rule XI subd. (1) of the Rules of the Supreme Court provides: "A brief must designate the page and line, or the folio, in the record where the evidence or matter referred to may be found, and in case of failure to do so, the court may ignore the point made." The present is a classic example of the necessity for this rule. In any event, appellant's failure to contradict respondent's categorical statement that the record is utterly silent with reference to the matter justifies our conclusion that such is the case.

(5) The fifth and sixth assignments, growing out of the court's refusal to give certain instructions requested by the defendant, are those most strongly urged in support of a reversal.

This case was heretofore before us on the plaintiff's appeal from an order granting a motion for involuntary dismissal under Rule 41(b) NRCP. Corn v. French, 71 Nev. 280, 289 P.2d 173, 181. We there held that, under the evidence adduced by the plaintiff, there were issues that should have gone to the jury, and reversed the judgment and remanded the case for trial. Appellant, under the theory that she was using the language of this court in its former opinion, insists that she was entitled to instructions (c) that the jury must find for plaintiff if it found that no emergency in fact existed necessitating immediate surgery and that it would have been reasonable and proper first to take the precautionary measure of having a biopsy performed; (d) that it must find for plaintiff if there was no emergency and no explanation given as to why a specimen could not have been sent to an outside pathologist (there being no pathologist at Las Vegas) or the patient referred to another city for treatment where these services were available or why she was not at least advised that defendant intended to make a diagnosis without biopsy or why she was not advised of Clark County's lack of such facilities and the availability to her of these facilities in some other city that could readily be reached by air transportation; (e) that it must find for plaintiff if it should find that there was

no resident pathologist in Clark County at the time and the *standard practice* there was to forward specimen of the tissue for presurgical analysis to Los Angeles or Salt Lake City, which procedure the defendant failed to follow; (f) that the use of proper diagnostic methods as an aid to diagnosis in cases of tumors or growths or other indicated cases is a matter of common knowledge and that the failure to make use thereof amounts to a failure to use that degree of care and diligence ordinarily used by physicians of good standing practicing in the community, in which event it must find for plaintiff; (g) substantially as expressed above; (h) that it must find for plaintiff if it finds defendant's conduct was improper; (i) that it must find for plaintiff if the consent to the operation as signed did not contain the word "mastectomy"; (j) that defendant is liable in damages if the operation is without plaintiff's consent; (k) virtually the same as (i); (l) that if the word "mastectomy" appeared upon the consent to the operation signed by plaintiff, the jury must determine whether plaintiff knew the meaning of the word.

This court did employ much of the language used in these requested instructions, but not in support of compelling a verdict for the plaintiff. The language was used in support of this court's conclusion that factual issues had been made requiring a jury determination, both as to the consent or its withdrawal and as to whether or not there was negligence in the removal of plaintiff's breast without pathological examination. Such was the limit of our ruling. As to the absence of pathological examination, we said:

"In the instant appeal from the judgment based upon the order granting the motion to dismiss, we are not called upon to determine whether or not defendant, in removing plaintiff's breast as the result of his original provisional diagnosis and without any pathological examination, failed to use ordinary care and diligence, but rather whether the evidence presented was sufficient to have justified a finding, or a necessary inference from the facts, to such effect, by a jury." Corn v. French, supra.

334

Instructions fixing defendant's liability if he operated without plaintiff's consent or after revocation of her consent were given. Instructions fixing defendant's liability in the event of his failure to follow standard practice in the community were covered to the extent necessary in other instructions. Expert evidence as to there being a standard practice in the community was all negative.

Rule 51 NRCP provides in part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The record shows that the grounds of appellant's objections to the refusal to give her requested instructions were that this court had in its first opinion determined the defendant's liability in the event of his failure to follow certain procedures. As noted above, we did not so hold. There was no error in the court's refusal to give the requested instructions.

Affirmed with costs.

EATHER and MERRILL, JJ., concur.